

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00044-CV

**IN THE INTEREST OF D.G. JR.**, and J.A.G., Children

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-01811
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: June 1, 2022

AFFIRMED

S.R. appeals the trial court's order terminating her parental rights to D.G. Jr. (born 2006) and J.A.G. (born 2010).[1] She argues the evidence is insufficient to support the trial court's finding that termination is in the best interest of the children. We affirm the termination order.

### BACKGROUND

On September 4, 2020, appellee the Texas Department of Family and Protective Services filed a petition seeking protection and conservatorship of D.G. Jr. and J.A.G., as well as termination of S.R.'s parental rights. The trial court signed an order naming the Department temporary managing conservator of both children and authorizing it to remove the children from

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

S.R.'s care. The Department created a family service plan setting out S.R.'s conditions of reunification with her children. Ultimately, the Department pursued termination of S.R.'s parental rights.

On December 3, 2021, fifteen months after removal, the trial court held a one-day bench trial at which S.R. appeared through counsel. The court heard testimony from the Department's caseworker. At the conclusion of trial, the court signed an order terminating S.R.'s parental rights pursuant to section 161.001(b)(1)(N), (O), and (P), and its finding that termination of S.R.'s parental rights was in the best interest of the children. S.R. appealed.

### ANALYSIS

In her sole issue on appeal, S.R. challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in the best interest of the children.

### *Applicable Law and Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate S.R.'s parental rights and that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

### *Best Interest*

### *Applicable Law*

S.R. challenges the sufficiency of the evidence supporting the trial court's order that termination of her parental rights was in the best interest of the children. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to consider

---

[2] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate

regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

*Application*

All the evidence at trial came from the caseworker who had been involved since the Department filed its original petition. She testified that after the Department became involved in this case, S.R. admitted to using methamphetamines and that there was a registered sex offender

---

an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

living in the home. Shortly after the children were formally placed with a paternal aunt, the Department created a family service plan requiring S.R. to complete a psychological evaluation and individual counseling, to complete random drug testing and substance abuse counseling, and to demonstrate that she had stable housing and employment as conditions of reunification. The trial court incorporated that family service plan as a court order.

At the time of trial, the children were 15 and 11 years old. *See* TEX. FAM. CODE § 263.307(b)(1). Their father died before the case began. During the fifteen months the legal case was pending, their mother was incarcerated on three occasions—she spent more time incarcerated than released. *See* TEX. FAM. CODE § 263.307(b)(2); *see also In re J.G.S.*, 550 S.W.3d 698, 706 (Tex. App.—El Paso 2018, no pet.) ("A parent's incarceration is relevant to his ability to meet the child's present and future physical and emotional needs."). While the Department presented no evidence about any physical or mental vulnerabilities of the children, the frequency and nature of the out-of-home placements were concerning to the caseworker.

The Department presented no evidence about whether the children were harmed after it received the initial report or became involved with the family. *See* TEX. FAM. CODE § 263.307(b)(3), (4). Similarly, the Department presented no evidence that the children were fearful of living in or returning to the home with S.R. *See* TEX. FAM. CODE § 263.307(b)(5). But it did present evidence about S.R.'s family service plan. That plan called for her to maintain stable housing and employment. *See In re C.H.*, 89 S.W.3d at 28 (recognizing evidence that proves a statutory termination ground is probative of best interest). Many of S.R.'s arrests were for failing to report to her probation officer, despite her representation to the caseworker that she was not required to report during those times. At the time of trial, S.R. was not incarcerated, and she again told her caseworker she was not required to report to her probation officer. However, the caseworker was concerned that, as in the past, this representation may not be accurate because S.R.

was not able to provide "any release or documentation stating that she is not on any probation" that would require her to report. S.R.'s repeated incarceration during the case demonstrated a history of instable housing for the children. *See Holley*, 544 S.W.2d 371–72 (evaluating the stability of the home in determining best interest).

When the case first began, S.R. had her own home. But she lost that housing when she was first incarcerated. When she was released, she moved in with her mother in a home owned by the mother's boyfriend, "[a]nd that's where she's been on and off since then." According to the caseworker, S.R.'s mother's boyfriend "has kicked them out several times. Whenever something goes awry, he tends to get upset and kicks everybody out of the home." The caseworker did not believe that would be a safe and stable home for D.G. Jr. and J.A.G. *See id*.

Similarly, the caseworker testified that S.R. did not have a job at the time of trial and had not "been able to hold down a job throughout the case." S.R. has reported that she has tried to get a job, but has provided no documentation to the caseworker to substantiate those efforts. D.G. Jr. and J.A.G. receive survivor benefits as a result of their father's death. The caseworker testified S.R. believed "that money was her money and nobody else should be getting it." She was upset that J.A.G.'s current placement was receiving those benefits. *See id*.

The caseworker also testified that S.R.'s family service plan required her to complete a mental evaluation and individual counseling. S.R. completed individual therapy, including a mental evaluation and OSAR assessment. *See* TEX. FAM. CODE § 263.307(b)(10) (evaluating willingness of family members to seek out, accept, and complete counseling services as part of best interest query). She did not, however, successfully complete the drug treatment program her OSAR assessment—and family service plan—called for. While she began a drug treatment program, she was unsuccessfully discharged in June of 2021 after she admitted to using methamphetamines. It was then recommended that S.R. complete a course of inpatient drug

treatment, but she did not enroll in that program. *See id.* § 263.307(b)(8) (reviewing history of substance abuse by those with access to home in evaluating best interest).

While she was detained, S.R. received certificates for completing courses in substance abuse education, family reunification, health education, and basic education, as well as courses entitled "Expectations and Outcomes" and "How To Use Your Knowledge." The caseworker testified these programs were not acceptable substitutes for the programs required by S.R.'s family service plan because they were "kind of a basic information, like the how to's, go about starting school, the how to come out and adjust to society." We have recognized failure to comply with a family service plan supports a finding that termination is in the child's best interest. *See, e.g.*, *In re J.G.C.*, No. 04-19-00572-CV, 2020 WL 354775, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.).

The caseworker credited S.R. for contacting her during the times she was not incarcerated but relayed that S.R. had not engaged in services during those times. Transportation proved an impediment to S.R., but when the caseworker offered her transportation to attend visits with her children or to undergo drug testing, S.R. did not accept. Similarly, S.R. claimed the phone numbers she was given for service providers were always wrong, but the caseworker verified that she had provided S.R. the correct information. *See* TEX. FAM. CODE § 263.307(b)(11) (looking at willingness and ability of family to effect positive environmental and personal changes). On the day of her 9:00 a.m. trial, S.R. had an appointment at 2:00 p.m. to meet with a service provider. At the time of trial, though, she had not actually started any services.

With regard to drug testing, S.R. attempted approximately ten drug tests during the course of the case. But the caseworker testified that S.R. refused the majority of the tests, and when asked why, "she would verbally admit to using methamphetamines, which is why she didn't attend." The last time she was released before trial, the caseworker sent her to drug test twice, but S.R did not

go. Instead, she requested to go on her own time, which "brought up concerns. . . that she [was] still using methamphetamines" the month before trial. *See, e.g.*, *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) ("A fact finder may reasonably infer from a parent's failure to take a drug test that the parent was using drugs."). Drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g.*, *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied).

In addition, S.R.'s visits with her children were inconsistent. While she was incarcerated, she wrote "a couple of letters" but had no phone contact and no in-person visits. Since S.R.'s release, the caseworker reported that J.A.G. typically plays on the phone during visits with his mother. The caseworker counseled S.R. to instruct J.A.G. to put the phone away and to interact with her. S.R. missed some visits, cancelling at the "last minute, stating she didn't have a ride." *See* TEX. FAM. CODE § 263.307(b)(12) (examining whether family demonstrates adequate parenting skills).

The caseworker reported that J.A.G. understands termination and he feels termination is best for him. He wants to be adopted. *See Holley*, 544 S.W.2d at 371–72 (evaluating the desires of the child). He has lived with his paternal aunt from December of 2020 until three days before trial, when the Department removed him because of concerns about the aunt. At the time of trial, he was placed at the Boysville Emergency Shelter, and the Department intended to place him with a paternal cousin. *See* TEX. FAM. CODE § 263.307(b)(2) (considering frequency and nature of out-of-home placements).

J.A.G.'s older brother, D.G. Jr., however, is in a different situation. The caseworker testified D.G. Jr. "was always running out from kinship where he was placed and going to mom. So their visits were never monitored, because they were doing it without permission." When the caseworker talked to S.R. about how those actions violated the visitation plan, her response was,

"I'm not going to say no to my son." D.G. Jr. wants to maintain a relationship with S.R. *See Holley*, 544 S.W.2d at 371–72 (considering desires of child in best-interest analysis).

At the time of trial, D.G. Jr. was in the Juvenile Detention Center facing charges of sexual assault of a child, evading arrest, and assault with a deadly weapon. The alleged victim in the assault with a deadly weapon case was his uncle. And on a separate occasion in July of 2021, D.G. Jr. "pull[ed] what appeared to be a gun on his cousin." S.R. was present during the incident and "she was in the background yelling and instigating, telling . . . the cousin to hit [D.G. Jr.] while [D.G. Jr.] was holding what appeared to be a gun." *See* TEX. FAM. CODE § 263.307(b)(12) (examining whether family demonstrates adequate parenting skills).

D.G. Jr. was placed with his brother in the home of their paternal aunt in May of 2021, but was removed from that home after he was arrested on the sexual assault of a child charge; the alleged victim was a child who lived in the home. *See* TEX. FAM. CODE § 263.307(b)(2) (considering frequency and nature of out-of-home placements). D.G. Jr. wants to maintain a relationship with his mother, but the caseworker believed that would not be in his best interest. According to the caseworker, "[w]henever [D.G. Jr.] has been around his mom, his behaviors escalate in a negative manner. He starts acting out, becomes violent, talking back, becoming aggressive with others. Their relationship is not healthy." *See* TEX. FAM. CODE § 263.307(b)(12).

The Department's permanency plan was adoption for both children. The caseworker testified a paternal cousin is willing to adopt J.A.G., and the Department is conducting an expedited home study in the hopes of moving him to that placement quickly. *See* TEX. FAM. CODE § 263.307(b)(2). "The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re B.R.Q.*, No. 04-20-00540-CV, 2021 WL 1199044, at *4 (Tex. App.—San Antonio March 31, 2021, no pet.) (mem. op.) (internal quotation marks omitted).

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of S.R.'s parental rights was in the best interest of her children. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule S.R.'s arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice